# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CASE NO.:

ALISA BAKER,

      Plaintiff,

v.

ALL SOURCE RECRUITING GROUP, INC.
d/b/a ARDOR HEALTH SOLUTIONS, a
Florida Profit Corporation, and MEDICAL
SERVICES OF AMERICA, INC., d/b/a
MEDI HOME HEALTH CARE, a Foreign
Profit Corporation.

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL WITH INJUNCTIVE AND DECLARATORY RELIEF REQUESTED

Plaintiff, ALISA BAKER ("Ms. Baker" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendants, ALL SOURCE RECRUITING GROUP, INC. d/b/a ARDOR HEALTH SOLUTIONS ("ARDOR") a Florida Profit Corporation, and Defendant, MEDICAL SERVICES OF AMERICA, INC. d/b/a MEDI HOME HEALTH CARE ("MSA" and collectively, "Defendants"), a Foreign Profit Corporation, and states as follows:

## NATURE OF THE SUIT

1.      This action is brought under the Fair Labor Standards Act ("FLSA"), Florida's Private Whistleblower Act ("FWA"), and Florida state contract law to recover from recover from Defendants overtime compensation, an additional equal amount as liquidated damages, lost wages, benefits, compensatory damages, including front pay and back pay and emotional distress damages, declaratory and injunctive relief, reasonable attorneys' fees and costs, and any other damages permitted by law.

## PARTIES

2.      Ms. Baker is an adult individual.

3.      ARDOR is a Florida Profit Corporation that operates and conducts business in, among others, Hillsborough County, Florida.

4.      ARDOR is a healthcare staffing agency which is involved in the business of, among others, recruitment, and placement of healthcare professionals.

5.      MSA is a Foreign Profit Corporation that operates and conducts business in, among others, Hillsborough County, Florida.

6.      MSA is a is a healthcare provider which is involved in the business of among others, home, and hospice care.

7.      At all times material hereto, Defendant ARDOR was continuously a joint employer with Defendant MSA, where both generally controlled the terms and

conditions of the employment of Plaintiff.

8.     At all times material hereto, Defendant ARDOR and Defendant MSA, shared: a common owner, common office/facility space, overlapping officers and directors, common managerial and office staff, jointly coordinated scheduling, and/or jointly controlled operations.

9.     At all times material hereto, Defendant ARDOR and Defendant MSA, had an arrangement to jointly share Plaintiff's services, and/or jointly exercise authority and control over Plaintiff's scheduling, payroll, and general working conditions, which often included an arrangement to have Plaintiff simultaneously complete tasks for both Defendants.

10.     On October 27, 2020, Plaintiff and Defendants entered into a Contract Commitment Agreement and an Assignment Confirmation Agreement where Plaintiff promised to provide her services in exchange for compensation. The Contract Commitment Agreement is attached hereto as "Exhibit A," and the Assignment Confirmation Agreement is attached hereto as "Exhibit B."

11.     The Assignment Confirmation Agreement is incorporated by reference to the Contract Commitment Agreement, and thus form a singular written Contract (the "Agreement"). *See* Exhibit A, *Contract Commitment Agreement, page 1; See also* Exhibit B, *Assignment Confirmation Agreement, page 1.*

12.     Pursuant to the Agreement, ARDOR assigned Plaintiff to work with MSA.

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 as they arise under 29 U.S.C. § 201, *et seq*.

14.     This Court also has supplemental jurisdiction over Plaintiff's state law contract claims and her FWA claims, as they arise out of the same operative facts and circumstances as her FLSA claims.

15.     Venue is proper in this Court, because Defendants conduct business in, among other places, Hillsborough County, Florida, and Defendants consented to this venue in the Agreement.  *See* Exhibit C, *Ardor Health Arbitration Agreement and Policy, Page 2*.

## FLSA and FWA COVERAGE

16.     At all times material hereto, Defendants were, and continue to be an "employer" within the meaning of 29 U.S.C. § 203(d).

17.     At all times material hereto, Plaintiff was Defendants' "employee" within the meaning of the FLSA.

18.     At all times material hereto, Defendants were, and continue to be, a "enterprises engaged in commerce" within the meaning of §6 and §7 of the FLSA, but not for purposes of the Motor Carrier Act.

19.     At all times material hereto, Plaintiff was engaged in the "production of goods for commerce" and subject to the individual coverage of the FLSA, but not for purposes of the Motor Carrier Act.

20.     Based upon information and belief, the annual gross revenue of Defendants, during all times relevant, was in excess of $500,000.00 *per annum* during the relevant time periods.

21.     At all times relevant hereto, Defendants was primarily engaged in the provision of nursing, healthcare, and staffing services in, among other places, Hillsborough County, Florida.

22.     At all times material hereto, Defendants had two (2) or more employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce, such as medication, healthcare equipment, and uniforms but which had come to rest within Hillsborough County, Florida.

23.     At all times material hereto, the work performed by Plaintiff was directly essential to the business performed by Defendants, in that Defendants could not operate their business without Registered Nurses such as Plaintiff.

24.     At all times material hereto, Defendants employed ten (10) or more persons.

25.     At all times material hereto, Defendants were, and still are considered

"employers" within the meaning of the FWA.

## STATEMENT OF FACTS

26.     Plaintiff worked as an hourly paid and non-exempt Registered Nurse, for Defendants from around October 19, 2020, until her unlawful termination on December 11, 2020.

27.     Plaintiff performed non-exempt duties for Defendants and was therefore entitled to be compensated for overtime work.

28.     In exchange for the performance of her duties as a Registered Nurse, Defendants offered to pay Plaintiff an hourly rate of $20.00 and an overtime hourly rate of $30.00, along with other benefits such as, but not limited to, holiday pay, a housing stipend, travel reimbursements, and a per diem stipend. *See* Exhibit A, *Contract Commitment Agreement, page 1.*

29.     Plaintiff accepted this offer.

30.     In consideration of the foregoing, Plaintiff commenced her work with Defendants on this basis.

31.     The executed Agreement outlined the terms of Plaintiff's employment. The foregoing created an enforceable written contract under Florida law.

32.     At various times material hereto, Plaintiff worked for Defendants in excess of forty (40) hours within a work week.

33.     Plaintiff was not exempt from entitlement to overtime wages under the

FLSA and should have been paid her full and proper overtime compensation.

34.     Plaintiff had no authority to hire or fire employees of Defendants.

35.     Plaintiff had no authority to discipline employees of Defendants.

36.     Plaintiff had no authority to determine the schedules to be worked by any employees of Defendants, or to change their schedules.

37.     Plaintiff had no authority to set rates of pay for other employees or agents of Defendants.

38.     Plaintiff had no input into performance reviews of other employees or agents of Defendants.

39.     All of Plaintiff's major decisions had to be cleared in advance by one of Defendants' supervisors.

40.     Plaintiff was closely monitored by Defendants' managers and supervisors at all times.

41.     Plaintiff followed procedures established by Defendants and did exactly as she was instructed to do.

42.     Throughout Plaintiff's employment, Defendants regularly required Plaintiff to work in excess of forty (40) hours per week.

43.     Defendants paid Plaintiff an hourly rate of $20.00 per hour.

44.     Plaintiff regularly worked fifty-five (55) or more hours per week for Defendants.

45.    Defendants regularly required Plaintiff to be "on-call" during her employment.

46.    Defendants failed to pay Plaintiff full and proper overtime compensation for all hours worked over forty (40) per week during the relevant limitations period.

47.    When Plaintiff worked more than forty (40) hours in a given work week, Defendants failed to properly pay her for all overtime hours worked.

48.    Defendants also failed to pay Plaintiff her earned holiday pay on November 26, 2020, at the agreed upon rate pursuant to the Agreement.

49.    Defendants' failure to properly pay Plaintiff for all her holiday pay and overtime hours worked constitutes a material breach of the Agreement under Florida law. *See* Exhibit B, *Assignment Confirmation Agreement, page 1.*

50.    At all times relevant, Defendants failed to keep and maintain accurate records of all hours worked by Plaintiff.

51.    Throughout her employment Plaintiff objected on numerous occasions, verbally and in writing, to MSA Director of Nursing, Rachel L. Ford ("Ms. Ford") and MSA Human Resources Manager, Melissa Flores ("Ms. Flores"), that Defendants' pay practices violated the FLSA, and Florida state contract law.

52.    These objections were protected activity under the FLSA and the FWA.

53.     Plaintiff's objections were ignored, and Defendants failed to remedy its illegal pay practices and breach of contract.

54.     On December 4, 2020, Plaintiff escalated her complaints to MSA Administrator, Amanda Smith ("Ms. Smith"), and objected once again, in writing, to Defendant's illegal pay practices and breach of contract.

55.     On December 11, 2020, in retaliation for Plaintiff's objections to Defendants' various violations of law, Defendants terminated Plaintiff's employment in violation of the law.

56.     Defendants terminated Plaintiff's employment because Plaintiff objected to Defendants' breach of contract, non-payment and/or underpayment of an overtime premium under the FLSA, and unlawful pay practices.

57.     There is an extremely close temporal proximity/nexus between Plaintiff asserting her objections to Defendants illegal pay practices, and her termination shortly thereafter.

58.     Plaintiff has been damaged as a result of Defendants retaliation and termination of her employment.

59.     As a result of Defendants' unlawful and retaliatory termination of her employment, Plaintiff has suffered severe emotional distress.

60.     Plaintiff should have been compensated at the rate of one and one-half times Plaintiff's regular rate for all hours that Plaintiff worked in excess of forty

(40) hours per week, as required by the FLSA, throughout her employment.

61.     Defendants violated Title 29 U.S.C. §207 in that:

(a) Plaintiff worked in excess of forty (40) hours in one or more workweeks for her period of employment with Defendants;

(b) No payments or provisions for payment, or insufficient payments or provisions for payment, have been made by Defendants to properly compensate Plaintiff at the statutory rate of one and one-half times Plaintiff's regular rate for **all** hours worked in excess of forty (40) hours per work week, as provided by the FLSA; and

(c) Defendants failed to maintain proper time records as mandated by the FLSA.

62.     Plaintiff estimates her FLSA damages to be as follows: 15 overtime hours worked per week for which she is owed her overtime rate of $30.00 per hour, totaling $450.00 owed per week X 8 weeks = **$3,600.00** unliquidated, and **$7,200.00** liquidated, plus attorney's fees and costs incurred.

63.     Prior to violating the FLSA, Defendants did not consult with an attorney to evaluate whether Plaintiff's actual job duties and pay structure rendered her exempt from recovering payment for all overtime worked under the FLSA.

64.     Prior to violating the FLSA, Defendants did not consult with the DOL to evaluate whether Plaintiff's actual job duties and pay structure rendered her

exempt from recovering payment for all overtime worked under the FLSA.

65.     Prior to violating the FLSA, Defendants did not consult with an accountant to evaluate whether Plaintiff's actual job duties and pay structure rendered her exempt from recovering payment for all overtime worked under the FLSA.

66.     Based on the allegations above, Plaintiff is entitled to liquidated damages, as Defendants have no objective or subjective good faith belief that its pay practices were in compliance with the FLSA.

67.     As to her FWA claims, Plaintiff's objections and refusals were considered protected activity pursuant to Fla. Stat. § 448.102(3), and qualified Plaintiff as a whistleblower under the law.

68.     Plaintiff was terminated in direct retaliation for reporting and objecting to Defendants' unlawful actions, or what she reasonably believed to be unlawful actions, in violation of Section 448.102 (3), Florida Statutes. *See Aery v. Wallace Lincoln-Mercury, LLC,* 118 So. 3d 904, 916 (Fla. 4th DCA 2013).

69.     Additionally, in light of the foregoing material breaches of the Agreement, Plaintiff has suffered damages, and is entitled to his unpaid wages, overtime wages, interest, and attorneys' fees pursuant to Section 448.08, Florida Statutes.

70.     Plaintiff has retained the law firm of RICHARD CELLER LEGAL,

P.A. to represent her in the litigation and has agreed to pay the firm a reasonable fee for its services.

**COUNT I**
**VIOLATION OF 29 U.S.C. § 207 OVERTIME COMPENSATION**

71.     Plaintiff reincorporates and re-alleges Paragraphs 1-14, 16-24, 27-31, 33-48, 51, 61-67, and 71 of the Complaint as though fully set forth herein, and further alleges as follows:

72.     Plaintiff is entitled to be paid time-and-one-half her regular rate of pay for each hour worked in excess of forty (40) per work week.

73.     During Plaintiff's employment with Defendants, Plaintiff regularly worked overtime hours, but was not paid full and proper time-and-one-half compensation for all hours worked.

74.     Plaintiff was not an exempt employee as defined by the FLSA.

75.     As a result of Defendants' intentional, willful, and unlawful acts in refusing to pay Plaintiff time-and-one-half her regular rate of pay for each hour worked in excess of forty (40) per work week in one or more work weeks, Plaintiff has suffered damages plus incurring reasonable attorneys' fees and costs.

76.     As a result of Defendants' willful violation of the FLSA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in

her favor against Defendants, and that this Court declare, pursuant to the FLSA, that the acts and practices complained of herein are in violation of the maximum hour provisions of the FLSA; award Plaintiff overtime compensation in the amount due to her for time worked in excess of forty (40) hours per work week; award Plaintiff liquidated damages in an amount equal to the overtime award; award Plaintiff reasonable attorneys' fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b); award Plaintiff pre-judgment interest; and order any other and further relief that this Court deems just and proper.

## COUNT II
## UNLAWFUL RETALIATION IN VIOLATION OF 29 U.S.C. § 215(a)(3)

77.     Plaintiff reincorporates and re-alleges Paragraphs 1-14, 16-24, 27-31, 33-48, 51-67, and 71 of the Complaint as though set forth fully herein, and further alleges as follows:

78.     Plaintiff objected to Defendants' illegal pay practices and asserted violations of the FLSA.

79.     Shortly thereafter, Defendants illegally terminated Plaintiff from her employment in violation of 29 U.S.C. § 215(a)(3).

80.     In retaliation, Defendants terminated Plaintiff's employment because Plaintiff objected to Defendants' non-payment and/or underpayment of an overtime premium under the FLSA, and because of her other objections to Defendant's illegal

pay practices.

81.    Plaintiff's employment was terminated by Defendants, effective December 11, 2020. Plaintiff was terminated for no other reason than her objections to Defendants' illegal pay practices.

82.    As a result of Defendant's intentional, willful, and unlawful actions, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, lost employment status, as well as humiliation, pain and suffering, and other monetary and non-monetary losses.

83.    The retaliatory firing provision of the FLSA states that "it shall be unlawful for any person ... to discharge or in any other manner discriminate against an employee because such employee has filed any complaint ... under or related to this [Act]." 29 U.S.C. § 215(a)(3).

84.    In *EEOC v. White and Son Enterprises*, 881 F.2d 1006, 1011 (11th Cir. 1989), the Court held that "Congress sought to secure compliance with the substantive provisions of the labor statute by having 'employees seeking to vindicate rights claimed to have been denied,' and lodge complaints or supply information to officials regarding allegedly substandard employment practices and conditions. The anti-retaliation provision of the FLSA was designed to prevent fear of economic retaliation by an employer against an employee who chose to voice such a grievance." (citing to *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S.

288, 292 (1960)).

**WHEREFORE**, Plaintiff requests that this Court enter a judgment in her favor and against Defendants for her actual and compensatory damages, including front pay and back pay and emotional distress damages, for liquidated damages, as well as for her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

<u>**COUNT III**</u>
<u>**FLORIDA'S PRIVATE WHISTLEBLOWER ACT – UNLAWFUL**</u>
<u>**RETALIATION**</u>

85.    Plaintiff reincorporates and re-alleges Paragraphs 1-62, 68, 69, and 71 of the Complaint as if set forth fully herein, and further alleges as follows:

86.    On December 11, 2020, Defendants illegally terminated Plaintiff from her employment in violation of Fla. Stat. § 448.102(3).

87.    Plaintiff was retaliated against and terminated in violation of Section 448.102(3), Florida Statutes, for objecting to illegal activity, or what she reasonably believed to be illegal activity, being conducted by Defendants, or for refusing to participate in same.

88.    Plaintiff objected to a violation of a law, rule, or regulation, or what she reasonably believed to be a violation of a law, rule, or regulation, or refused to participate in same, and was terminated as a direct result of same, which constitutes a violation of the FWA.

89. As a result of Defendants' intentional, willful, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost benefits, lost employment status, as well as humiliation, pain and suffering, and other monetary and non-monetary losses.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendants for her actual and compensatory damages, including, but not limited to, front pay back pay, and emotional distress damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

<u>COUNT IV</u>
<u>BREACH OF WRITTEN CONTRACT</u>

90. Plaintiff reincorporates and re-alleges Paragraphs 1-16, 27-33, 43-50, 52-56, 70, and 71, of the Complaint as if set forth fully herein, and further alleges as follows:

91. Plaintiff and Defendants entered into a compensation Agreement, as described above, in which Defendants agreed to pay Plaintiff her proper holiday pay and overtime rate for each overtime hour worked in accordance with State and Federal law.

92. Plaintiff performed the necessary work under the Agreement to earn the holiday and overtime pay to which she was contractually entitled, and in

consideration of Defendants' offer and Plaintiff's acceptance of same.

93.    Defendants breached the parties' Agreement, however, by refusing to pay Plaintiff for all overtime hours at the appropriate rate, necessitating this lawsuit.

94.    Pursuant to Section 448.08, Florida Statutes, Plaintiff is entitled to the costs of this action and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff's request judgment against the Defendants for damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as a matter of right by jury.

Dated this 15th day of June, 2022.

Respectfully submitted,

**By: /s/ Noah E. Storch**
Noah E. Storch, Esq.
Florida Bar No. 0085476
RICHARD CELLER LEGAL, P.A.
10368 West State Road 84, Suite 103
Davie, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-mail: noah@floridaovertimelawyer.com

*Trial Counsel for Plaintiff*

# ARDOR Health Solutions

T h e   H e a l t h c a r e   S t a f f i n g   S o u r c e

**5830 Coral Ridge Drive, Suite 300**
**Coral Springs, FL 33076**
**Phone 866.425.5768/Fax 888.229.1124**

## CONTRACT COMMITMENT AGREEMENT

This Contract Commitment Agreement (hereinafter "Agreement") is made by and between All Source Recruiting Group, Inc. d/b/a Ardor Health Solutions (hereinafter "Employer"), and Alisa Baker, RN, (hereinafter "Employee"). Employer and Employee agree as follows:

| | |
|---|---|
| **EFFECTIVE DATE:** | 10/21/2020 |
| **CANDIDATE NAME:** | Alisa Baker |
| **START DATE:** | 11/02/2020 |
| **END DATE:** | 12/26/2020 |
| **APPROVED OFF DATES:** | |
| **FACILITY INFORMATION:** | Medi Home Health Agency(Fort Walton Beach, FL) |
| **POSITION:** | Registered Nurse |

**DOCUMENTS:** All pre-employment documents must be received prior to your start date which includes Signed Contract Commitment Agreement, Signed Assignment Confirmation, SS Card, Driver's License, current Professional License, Physician Statement within current year, PPD within current year, Hep B Immunization/Declination, OSHA, HIPAA, CPR, Form I-9, W-4, References, Skills Checklist and any other requested Certifications. If all documentation is not submitted prior to your start date cancellation of contract or delay of start date could be issued.

**HOLIDAY PAY:** Holidays recognized by Ardor are New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day. Employees who work on the aforementioned holidays will be paid at one and one-half (1 ½) times the agreed upon hourly rate. If the normal payday falls on a company-recognized holiday, paychecks will be distributed one workday before the aforementioned schedule.

**HOME HEALTH ASSIGNMENTS:** Employees working in Home Health assignments acknowledge and understand that he/she will only be compensated for points/visits completed (e.g. if 30 points/visits are required, but employee only completes 25 points/visits, employee will only be paid for 25 points/visits). Further, employees in Home Health assignments acknowledge and understand that patient charting must be completed on the same day that the visit takes place. Failure to complete the patient charting on the visit day, may result in immediate termination.

**SCHOOL ASSIGNMENTS:** Employees working in School assignments acknowledge and understand that he/she will not be paid his/her hourly rate for hours not worked due to unforeseen school closures (e.g. school closures due to natural disasters, labor strikes, etc.). Additionally, employees working in School assignments shall not hold themselves out to be "on call," and agree and acknowledge that he/she will not receive compensation for being "on call."

**DRUG TEST:** You are required to take a drug test prior to start with a negative result.

**COMPENSATION:** In the event clinician takes time off during an assignment(personal, vacation, sick day, etc.)  and works under 32.00 hours/week, the Candidate understands and agrees that he/she will only be paid for hours actually worked.

**Inclement Weather – Ardor Health will pay housing stipend only if the facility is closed due to inclement weather.**

**TIMESHEETS:** Must be completed by Monday 9:00 AM EST

| | |
|---|---|
| **HOURLY RATE:** | $20.00 |
| **OVERTIME  HOURS WORKED RATE:** | $30.00 (Requires prior approval, refer to ACA) |
| **CAR ALLOWANCE:** | N/A |
| **WEEKLY HOURS AVAILABLE:** | Guaranteed 32.00 Hours (Potential 40.00) |
| **HOUSING:** | Weekly $768.00  (Max $960.00) |
| **MEDICAL INSURANCE:** | Declined |
| **PER DIEM:** | Weekly $361.60  (Max $452.00) |
| **TRAVEL REIMBURSEMENT:** | $200.00 |
| **MILEAGE IF HOME HEALTH OR FLOATING:** | $0.45 Per Mile |
| **BONUS:** | N/A |

**\*Candidate MUST get prior WRITTEN APPROVAL from Supervisor to work Overtime and Holiday time.**

It is the Employee's responsibility to maintain up-to-date credentialing throughout the duration of the assignment.  Failure to update expiring credentials will result in Ardor removing the Employee from their schedule.

Doc ID: 20201021163314950
Sertifi Electronic Signature

**IN WITNESS WHEREOF, and intending to be legally bound thereby, the undersigned have set their hands as of the date stated below.**

***All Source Recruiting Group, Inc. d/b/a Ardor Health Solutions.***
**(Employer)**

**"EMPLOYEE"**

By: _Patricia Lamia._

Its: _President._

E-Signed :   10/27/2020 01:29 PM CDT

*Alisa Baker*

albkr80@gmail.com
IP: 107.77.207.225

Sertifi Electronic Signature

DocID: 20201021163314950

10/27/2020

Doc ID: 20201021163314950
Sertifi Electronic Signature



**5830 Coral Ridge Drive, Suite 300**
**Coral Springs, FL 33076**
**Phone 866.425.5768/Fax 888.308.1147**
**Web: www.ArdorHealth.Com**

# ASSIGNMENT CONFIRMATION AGREEMENT

**TIMESHEETS:** Ardor Health will make no payment to Employee without receipt of a timesheet which has been signed or electronically approved by the assigned facility supervisor. Employee is responsible for submitting his/her timesheet to Ardor Health's timesheet portal by **9:00 AM EST** every Monday. Ardor Health will make payment for wages provided that Employee has submitted his/her timesheet to Ardor Health on a timely basis. In the event Employee fails to provide his/her timesheet for any pay period as provided above, amounts due for such pay period will be paid on the next regular payday. Questions regarding timesheets can be made to your recruiter or emailed to timesheets@ardorhealth.com.

**OVERTIME:** Prior approval from facility must be given to Ardor Health in order to get paid overtime hours.  Candidate must alert recruiter prior to working overtime hours and Ardor Health account manager must have written approval from facility. In the event Employee works overtime, Employee will be paid overtime in accordance with the applicable State or Federal Laws.

**HOLIDAY PAY:** Holidays recognized by Ardor are New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day. Employees who work on the aforementioned holidays will be paid at one and one-half (1 ½) times the agreed upon hourly rate. If the normal payday falls on a company-recognized holiday, paychecks will be distributed one workday before the aforementioned schedule.

1.1 Employee is an employee of All Source Recruiting Group d/b/a Ardor Health Solutions, a Florida corporation. This Agreement for employment is made in the State of Florida.  If Employee misses hours due to illness or any other reason during the assignment period it is their responsibility to notify their recruiter and the Manager/Supervisor at the facility as soon as possible.  Additionally, the Employee must make every effort to make up missed hours during that pay period, if available.

1.2 The Employee hereby recognizes that contract work requires being adaptable to new, differing or changing requirements of the job throughout the assignment (including, for example, the need for work during different shifts or a different location within reason), and agrees to comply with the direction of any assigned supervisor(s) from the Facility. The Employee agrees to conduct himself/herself in such a manner as to reflect positively on both Employee and Ardor Health. Employee's performance will be evaluated periodically throughout the term of this contract. Unacceptable performance, as determined in the discretion of the Facility or Ardor Health, will be grounds for immediate termination.

1.3 Each assignment varies and may not include benefits such as housing subsidy, car allowance, or per diem. If your assignment includes any of these benefits, they will be prorated as follows: Please see the **COMPENSATION** section of your Contract Commitment Agreement (CCA).

1.4 Employee must ensure that the Employer has the following minimum information prior to commencement of an assignment: Background Check (Employee authorizes employment/criminal background checks to be performed by Employer or its designated representative, and Employee agrees to sign the Background Check Disclosure and Authorization Form, as well as read the Consumer Financial Protection Documentation included in Ardor's employment packet), Drug Screen, Skills Checklist, two References, HIPAA/OSHA Form, W-4, Form I-9, SS Card, Driver's License, Tax Home Certification (if applicable), voided check or signed bank letter if opting for Direct Deposit, CPR, TB (within the past year), Hepatitis B vaccine, titer or declination, Physical (within the past year), copy of active professional state license(s) and all certifications. In addition, employee must complete Ardor's Employment packets. It is the Employee's responsibility to maintain up to date documentation throughout the duration of the assignment and failure to do so will result in Ardor requesting the Client remove the Employee from their schedule. Employee represents that he/she is qualified to do the assigned job.  Employee acknowledges that the assignments arranged by the Employer are temporary in nature.

1.5 Candidate agrees that as an Ardor Health Solutions Employee he/she will not accept a permanent position with Client until Employee has completed 1040 hours at the assignment with the same Client. An exception may be approved if the employer and the facility agree in writing to reduce 1040 hours minimum period. Additionally, the employee agrees that once the contract with the facility has been completed, the employee will not return to the facility with another employer for a period of 1 year.

Rev. 7.12.17

1.6 Employee understands that if he/she is terminated with cause by Client, he/she must repay all monies advanced and expected by the Employer on a pro-rated basis and reimburse Employer for all monies expended on behalf of the Employee, including but not limited to housing, health insurance and licensure. Employee understands that if he/she terminates any assignment early with or without cause or is terminated with cause by Client, he/she will forfeit any additional travel reimbursement remaining on contract. Employee understands that if he/she terminates any assignment early with or without cause or is terminated with cause by Client that all direct deposits will stop, and any monies owed will be paid in a live check. Employee agrees to follow all policies and procedures of the facility to which he/she is assigned within the laws of the state which employed. Employee agrees not to disclose any information related to the business of the Employer including Employee's salary and reimbursements, except that this is not intended to prohibit Employees from exercising their right under Section 7 of the NLRA to engage in concerted activities for mutual aid and protection. Employee will treat this information related to Employer's business as confidential during and after his/her assignment. Ardor Health may terminate this contract without notice for any of the following reasons: Cancellation by the Facility of the contract between Ardor Health and facility; any breach of this employment contract by Employee; unsatisfactory performance by the Employee, as determined by Facility and or Ardor Health in their reasonable discretions; any reason specified elsewhere in this contract.

1.7 Employee understands that he/she is expected to work all contracted shifts. In the event that Employee misses an assigned shift, he/she may have a missed charge expense in the amount of $18.00/hr, and he/she agrees that a missed shift charge may at the Company's sole and absolute discretion, automatically be deducted from Employee's compensation as permitted by law *(including bonuses, if any)* or invoiced to Employee, where applicable. Employee may have the opportunity to make up any missed time; however, neither Employer nor client guarantee that an opportunity to make-up any missed time will be available. Employee will not incur a missed shift charge for client facility call-offs that are noted on Employee's timesheet and approved in writing by authorized personnel at the client facility. Any missed shifts should be made-up in the same pay week if possible or may be made-up in an overtime shift or called-in shift, if approved by the client facility.

1.8 Ardor Health may immediately cancel this Agreement or any Assignment, without notice or liability to Employee (except for payment of compensation for undisputed services rendered up to the date of cancellation) for the following reasons:

a. Employee's breach of any duty under this Agreement;
b. Upon Client's request for removal of Employee for reasons relating to professional competence or integrity;
c. Upon Client's request for removal of Employee for reasons determined to be cause for termination by the client;
d. Upon denial, revocation, suspension, surrender or limitations of Employee's: (1) license in any state; (2) Driver's license (for Home Health Assignments); (3) privileges at any healthcare facility or upon Employee's exclusion from participation in any healthcare program;
e. Upon Client's determination that Employee does not meet client credentialing requirements;
f. Upon Ardor Health's reasonable determination that Employee has conducted himself or herself in a manner unacceptable to Ardor Health or has otherwise failed to perform his or her duties in accordance with professional and ethical standards, including but not limited to repeated tardiness or absence;
g. Upon discovery that Employee has provided inaccurate or incomplete information during Ardor Health's application or credentialing process;
h. Upon Client's termination of an assignment for convenience
i. Upon Client's termination of its contract with Ardor Health for convenience;
j. Upon Client's failure to timely pay Ardor Health monies due under client's agreement with Ardor Health; or
k. In the event the Ardor Health or client credentialing process has not been completed within a reasonable time prior to the start date of any Assignment.

1.9 Candidate may cancel this Agreement or any Assignment immediately without being liable for Damages (as defined in Section 2.0 below) if Candidate becomes incapacitated or otherwise physically unable to perform services for an extended period of time beyond reasonable incidences of short-term illness. Ardor Health reserves the right to require verification of Candidate's physical condition in this circumstance.

2.0 Either party may terminate this Agreement or any Assignment at any time upon thirty (30) days notice. Any termination by Candidate must be in writing. In the event that a candidate cancels an assignment with less than thirty (30) days written notice for reasons other than those allowed in Section 1.9 above, Candidate shall be responsible as liquidated damages for payment of any non-refundable expenses and fees incurred by Ardor Health in connection with the canceled assignment, including but not limited to security deposits, rents, airfare, health insurance, licensure and penalties assessed by Clients and profits lost by Ardor Health in connection with cancellation (all such fees, expenses, lost profits and penalties being collectively "Damages"). Notwithstanding the foregoing, the maximum amount of lost profits Candidate shall be liable for in the event of cancellation with less than thirty (30) days notice shall be the period covered by the Assignment up to a maximum of thirty (30) days. Candidate's negligence in completing either Ardor Health's or Client's credentialing requirements which result in the assignment start date being delayed or cancellation of the assignment may be subject to the Damages described above.

Doc ID: 20201021163314994
Sertifi Electronic Signature

2.1 The Employer provides equal employment opportunities to all employees and applicants for employment without regard to race, color, religion, sex, national origin, age, citizenship, disability, veteran status or any another protected status.

2.2 Employee acknowledges that employment by the Employer is at will. This Agreement is not intended to create, add to, or imply any contractual or other right of continued employment by the Employer. Employee is an Employee of the Employer and not of the client facility to which he/she is assigned. Employee agrees to accept and comply with the rules and working conditions established by the Employer as well as any rules of the client facility applicable to the project or the assignment.

2.3 Employer cannot and does not guarantee Employee a specific number of assignments or a fixed duration of any particular assignment. Employee is not eligible for or entitled to participate in, any benefit plan offered by Employer's clients or their parents, affiliates, subsidiaries, or successors to any of their direct employees, regardless of the length of Employee's assignment to Employer's clients and regardless of whether Employee is found to be a common law employee of Employer's clients for any purpose. Therefore, with full knowledge and understanding, Employee hereby expressly waives any claim or right that Employee may have to such benefits and agrees not to make any claim for such benefits.

2.4 Employee shall not, without the prior written consent of Employer, directly or indirectly, seek or accept employment by, or engagement as an independent contractor or perform any services while on the payroll of any other staffing firm, for any client to which Employee is or has been assigned by Employer, for a period of one (1) year following the last date of his or her most recent assignment to such client. Employee understands that Employer may condition such consent upon the payment of a fee or other compensation to Employer by the client or another staffing firm that seeks to employ Employee or to assign Employee to work for that client of Employer. Employee shall not refer other employees or candidates for employment directly to client facilities. Any such referral shall be made only through Employer.

2.5 If Employee does not complete guaranteed hours, if applicable, and/or any assignment (except for the client's cancellation for reasons unrelated to Employee's performance), Employee shall indemnify and hold Employer harmless for all losses, liabilities, and expenses Employer may incur, including lost fees, commission, attorneys' fees, and other compensation as a result of such non-completion and shall reimburse Employer for a prorated share of housing expenses, travel costs, and benefits. Employee agrees that the monies due for such reimbursement to Employer may be deducted from Employee's final pay and if a balance remains, Employee shall immediately pay Employer for any such balance. Employee shall indemnify and hold Ardor Health harmless for all losses, liabilities, and expenses Ardor Health may incur as a result of Employee's own negligence. Employees working in Home Health assignments acknowledge and understand that he/she will only be compensated for points/visits completed (e.g. if 30 points/visits are required, but employee only completes 25 points/visits, employee will only be paid for 25 points/visits). Further, employees in Home Health assignments acknowledge and understand that patient charting must be completed on the same day that the visit takes place. Failure to complete the patient charting on the visit day, may result in immediate termination. Employee agrees that he/she will not be paid the contractual rate should Employee fail to comply with the proper recording and submission procedures of the Facility, and Employee will only be paid according to State and Federal minimum wage laws for hours worked should Employee fail to comply with the proper recording and submission procedures of the facility. In any such event, Employee agrees that the difference between the paid contractual rate and the applicable State and Federal minimum may be deducted from Employee's final pay and if a balance remains Employee shall immediately pay Employer for any such balance. Employee understands that he/she may be provided property or materials by the facility for use by Employee, and certain property or materials must be returned to Facility upon termination or expiration of the contract. Employee agrees to reimburse Ardor for all losses, expenses, or liabilities incurred by Ardor due to Employee's failure to return property or materials provided by the facility, loss of said property or materials, or damage to the property or materials. In any such event, Employee agrees that the monies due for such reimbursement may also be deducted/withheld from Employee's final pay and if a balance remains, Employee shall immediately pay Ardor for any such balance.

2.6 Employee agrees that Ardor Health may deduct from compensation owed Employee for services rendered hereunder the following: (a) any fees assessed against Ardor Health for damages caused by Employee to housing accommodations and/or vehicle rentals; (b) any charges to Ardor Health incurred for goods, services, or amenities requested or arranged by Employee which were not otherwise agreed to by the parties in the CCA for the related assignment; (c) Damages as described in Section 2.0 above; and (d) any fees incurred as a result of Employee's failure to timely vacate housing accommodations made by Ardor Health. Upon request, Ardor Health agrees to provide Employee with documentation for any such fees or charges deducted in accordance with this Section.

**Governing Law:** This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without references to any conflicts-of-law principles. Employee hereby consents to personal jurisdiction of the courts of the State of Florida, with the venue in Broward County. Candidates working within the state of California will agree to work under an alternative work week schedule. Overtime in California will be paid time and one-half for every hour worked over 8 hours a day. In addition, California candidates will be paid double-time per hours worked over 12 hours in one day. The canon of construction that agreements are to be construed against the drafter shall not be applicable in any dispute arising hereunder.

**Severability:** Each provision of the Agreement shall be considered severable such that if any one provision or clause conflicts with existing or future applicable law, or may not be given full effect because of such law, this shall not affect any other provision of the Agreement that can be given effect without the conflicting provision or clause.

Doc ID: 20201021163314994
Sertifi Electronic Signature

**Entire Employment Agreement; No Modification:**  This Agreement contains the entire agreement between Employer and Employee and supersedes any and all prior agreements or understandings (whether written or oral) between Employee and Employer relating to the subject matter covered by the agreement.  Any oral representation or modification of this Agreement shall be of no force or effect.  This Agreement may not be modified, altered, or terminated except upon the express written consent of Employee and Employer.

**Disclosure of Employment Agreement:**  Employee agrees that he/she will advise any prospective employer of the covenants and restrictions in this Agreement.  Employee also authorizes Employer to advise any other company or person of the existence and terms of this Agreement.

As a new hire, Employee is eligible for benefits on the date of hire on each contract.  With each contract Employee understands he/she has to either accept or decline Benefits. Employee also understands that his/her enrollment in Dental, Vision or Supplemental plan offerings are optional.

**IN WITNESS WHEREOF, and intending to be legally bound thereby, the undersigned have set their hands as of the date stated below.**

*All Source Recruiting Group, Inc. d/b/a Ardor Health*                    *"EMPLOYEE"*
*Solutions.*   **(Employer)**

By: *Patricia Lamia.*

Its: *President.*

E-Signed :   10/27/2020 02:31 PM CDT

*Alisa Baker*

albkr80@gmail.com
IP: 107.77.207.225                    Sertifi Electronic Signature
                                       DocID: 20201021163314994

10/27/2020